## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Alison Yates, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, do hereby depose and state as follows:

1. I am an "investigative or law enforcement officer" and am authorized by law to conduct investigations and make arrests for offenses enumerated in the United States Code. I am a "Federal Law Enforcement officer" within the meaning of Fed.R.Crim.P. 41(a)(2)(C).

## PURPOSE OF THIS AFFIDAVIT

2. I assert that there is probable cause to believe that Jose TROCHEZ-SANCHEZ, Christopher PAREDES-MORENO and Francisco ALEJANDRO-ESCOBAR violated Title 21, U.S.C., Section 841(a)(1), possession with intent to distribute distribution of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. The statements set forth in this affidavit are based upon my training and experience, consultation with other experienced investigators, agents, and other sources of information related to this investigation. This affidavit is intended to set forth probable cause in support of the criminal complaint and arrest warrant and does not purport to set forth all of my knowledge regarding this investigation.

## BACKGROUND OF AFFIANT

3. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and as such I am empowered under Title 21, United States Code, § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure, and arrest warrants. I have been employed as a DEA Special Agent since March 2003. In connection with my official duties, I investigate criminal and civil violations of the Controlled Substances Act, and I have testified in judicial proceedings for violations of laws concerning controlled substances. During my time with DEA, I have participated in

numerous drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have been involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

## FACTS AND BACKGROUND OF THE INVESTIGATION

4. Since October 2019, the DEA Glenwood Springs Post of Duty (GSPOD), the Two Rivers Drug Enforcement Team (TRIDENT) and the Gore Range Narcotics and Interdiction Team (GRANITE) have been conducting an investigation into the distribution of methamphetamine in the Western Colorado region.
5. In October of 2019, a cooperating defendant (CD) told Agents that an individual known to the CD as "Jesus" is a methamphetamine source of supply who resides in Mexico. The CD told Agents that "Jesus" communicates via WhatsApp and utilizes telephone number 52-6383800020. The CD stated that "Jesus" sends methamphetamine through the mail system after "Jesus" receives a down payment for the methamphetamine via Western Union.
6. In October 2019, Two Rivers Drug Enforcement Team (TRIDENT) Commander Dave Moreno acting in an undercover capacity began communicating with Jesus Manuel URIAS-CASTANEDA (52-6383800020) for the purpose of purchasing methamphetamine from URIAS-CASTANEDA. During text messages and telephone calls via WhatsApp, it was agreed that Commander Moreno would send via Western Union a down payment of $1,500.00 (TRIDENT OAF) to URIAS-CASTANEDA in Mexico for two (2) pounds of methamphetamine.
7. On October 18, 2019, Commander Moreno sent $1,500.00 via Western Union to URIAS-CASTANEDA's wife and provided the name Daniela Jimena Llanes Inzunza in Sonora, Mexico. After numerous text messages and telephone calls

between URIAS-CASTANEDA and Commander Moreno it was agreed that URIAS-CASTANEDA would instead send thirty pounds of methamphetamine to Commander Moreno for the agreed upon price of $2,500.00 per pound for a total of $75,000.00 upon delivery.

8. On November 13, 2019, URIAS-CASTANEDA informed Commander Moreno that an individual named "Jose" or "Chepe" was going to leave Tucson, Arizona at midnight with the thirty pounds of methamphetamine and drive to Glenwood Springs to deliver it to Commander Moreno. Commander Moreno gave URIAS-CASTANEDA 400 E Meadows Drive in Glenwood Springs as an address to give "Jose" as a location to meet Commander Moreno. URIAS-CASTANEDA informed Commander Moreno that "Jose" would call Commander Moreno when he was in the area.

9. On November 15, 2019, at approximately 12:00 pm, Commander Moreno received a telephone call from 626-234-7548. The caller identified himself as "Jose" and stated that he was in the area. At that time, surveillance units located two vehicles with California license plates at the Alta Convenience Store, 2310 Glen Avenue in Glenwood Springs. The vehicles were identified as a 2008 Chevrolet Silverado bearing license plate 41562J1 (Registered Owner: Karen PAREDES, 3852 Maine Avenue, Apt. B, Baldwin Park, CA 91706) and a 2012 Chevrolet Camaro bearing license plate 6UWA117 (Registered Owner: Christopher PAREDES, 3852 Maine Avenue B, Baldwin Park, CA 91706). During surveillance of these two vehicles, Agents/Officers observed three Hispanic males talking together outside between the two vehicles. During surveillance of the Chevrolet Silverado and Chevrolet Camaro, Commander Moreno was in telephone contact with "Jose". While Commander Moreno was in cellular telephone contact with "Jose", Agents/Officers observed one of the Hispanic males (later identified as Jose TROCHEZ-SANCHEZ) talking on his cellular telephone during the same time frame Commander Moreno was in cellular contact with "Jose".

10. During the telephone call between Commander Moreno and "Jose" it was agreed that they would meet in the parking lot of the Kum & Go gas station, 2510 Gilstrap Court, Glenwood Springs. Moments later, at approximately 12:41 pm, surveillance units observed the Chevrolet Silverado and the Chevrolet Camaro leave the Alta Convenience Store and enter the parking lot of the Kum & Go. The Chevrolet Camaro parked on the west side of the parking lot immediately in front of the store and the Chevrolet Silverado parked on the eastern side of the parking lot near the Kum & Go car wash.
11. Moments later, additional surveillance units were staged around the Kum & Go parking lot and westbound on Interstate 70.  At approximately 1:21 pm, Commander Moreno entered the Kum & Go parking lot.  At that time, surveillance units observed Commander Moreno park in a parking space in front of the store.  Commander Moreno then placed a telephone call to "Jose", who then confirmed that he was driving a Chevrolet Silverado.  Commander Moreno then proceeds to drive over to the Chevrolet Silverado, acknowledge "Jose" who was in the driver seat of the pick-up truck and yell to "Jose" for "Jose" to follow Commander Moreno.  At that time, Commander Moreno followed by "Jose" in the pick-up truck exited the gas station parking lot and drive westbound on Interstate 70.  Surveillance units then observed the Chevrolet Camaro exit the parking lot shortly thereafter and drive westbound on Interstate 70, attempting to follow the Silverado and Commander Moreno's undercover vehicle.
12. SA Alison Yates and SA David Smith who were assigned as the undercover protection unit was following the Chevrolet Silverado and Commander Moreno westbound on Interstate 70, when SA Yates and SA Smith observed the Chevrolet Camaro pass SA Yates and SA Smith at a high rate of speed appearing to try and catch up to the Chevrolet Silverado.
13. Based upon the investigation and the totality of the circumstances, Agents believed that the occupants of the Chevrolet Silverado and the occupants of the Chevrolet Camaro were acting in concert together and possessed methamphetamine to distribute to the undercover agent.  Agents then asked for

law enforcement officers with Colorado State Police and Garfield County Sheriff's Office to conduct stops on the Chevrolet Silverado and the Chevrolet Camaro.

14. The driver of the Camaro was identified as Francisco ALEJANDRO-ESCOBAR and the passenger was identified as Christopher PAREDES-MORENO. During the traffic stop, consent to search the vehicle was obtained from both ALEJANDRO-ESCOBAR and PAREDES-MORENO. During a search of the vehicle, a black duffle bag was located in the trunk of the vehicle where the spare tire would be located. Upon opening the black duffle bag, 28 clear vacuum sealed bags containing a clear crystal like substance was discovered. ALEJANDRO-ESCOBAR and PAREDES-MORENO were placed under arrest where they were then transported to the DEA Glenwood Springs POD for questioning.

15. The driver of the pick-up truck was identified as Jose Santos TROCHEZ-SANCHEZ and the passenger of the vehicle was identified as Karen Paredes. During questioning, TROCHEZ-SANCHEZ stated that they were in Colorado on vacation. When asked where in Colorado they were vacationing, TROCHEZ-SANCHEZ responded the next exit up. TROCHEZ-SANCHEZ stated that they got gas at a gas station and they were headed back to Los Angeles. Paredes stated they had stopped at the dinosaur museum and wanted to learn more about Colorado and see snow. Paredes told Officers they had got gas at a gas station, ate lunch and were headed back to California. Paredes then stated they were traveling to see family but could not recall what city the family member was located in. Paredes initially claimed they were not traveling with anyone but then stated they were traveling with her brother who was driving a Chevrolet car but did not know what kind of car it was. At that time, consent to search the vehicle was granted by Paredes. A K-9 was deployed where it alerted and indicated to the presence of illegal narcotics. A search of the vehicle was conducted with negative results. TROCHEZ-SANCHEZ was subsequently arrested and transported to the DEA Glenwood Springs POD for questioning.

16. PAREDES-MORENO was advised of his Miranda Rights and stated he understood his rights and agreed to answer questions. During questioning of Christopher PAREDES-MORENO, he stated that he and ALEJANDRO-ESCOBAR were traveling in his Camaro and that his sister (Karen Paredes) and her husband TROCHEZ-SANCHEZ were traveling in a separate vehicle. PAREDES-MORENO stated he was going to be paid $2,000.00 for delivering the methamphetamine but provided no additional information.
17. ALEJANDRO-ESCOBAR was advised of his Miranda Rights and stated he understood his rights and agreed to answer questions. ALEJANDRO-ESCOBAR stated that they had departed Los Angeles the previous day and drove straight to Colorado where they stayed at a hotel but was unsure as to where the hotel was located. ALEJANDRO-ESCOBAR stated that he did not have knowledge of the methamphetamine in the car and that if he knew he would have run from law enforcement. Upon receiving consent to search his cellular telephone, your affiant observed an address in Tucson, Arizona located in his cellular telephone. When asked about the address in Tucson, ALEJANDRO-ESCOBAR then stated they had left Los Angeles and drove to a hotel in Tucson but he did not know anything else because he stayed in the hotel. At this time, ALEJANDRO-ESCOBAR stated that he shouldn't say anything else.
18. TROCHEZ-SANCHEZ was advised of his Miranda Rights and stated he understood his rights and requested to speak to a lawyer.
19. Accordingly, I am seeking a warrant for TROCHEZ-SANCHEZ, PAREDES-MORENO and ALEJANDRO-ESCOBAR's arrest in this matter.

## CONCLUSION

20. Based upon the aforementioned information, events, and my training and experience, I submit that there is probable cause to believe that Jose TROCHEZ-SANCHEZ, Christopher PAREDES-MORENO and Francisco ALEJANDRO-ESCOBAR has committed a violation of Title 21, U.S.C., Section 841(a)(1),

possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance which substantiates the issuance of an arrest warrant.

I, Alison M. Yates, a DEA Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

*s/ Alison M. Yates*
Alison M. Yates
Special Agent
Drug Enforcement Administration

Subscribed, attested to and acknowledged by reliable electronic means on November 21, 2019.

s/ Gordon P. Gallagher
_____
Gordon P. Gallagher
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**Application and affidavit reviewed and submitted by Pete Hautzinger, Assistant United States Attorney.**