IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:19-cr-00534-MSK-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JOSE SANTOS TROCHEZ-SANCHEZ
2. CHRISTOPHER PAREDES-MORENO

    Defendants.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Pete Hautzinger, Assistant United States Attorney for the District of Colorado, and the defendant, Jose Santos Trochez-Sanchez, personally and by counsel, Marna Lake, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

A. *Defendant's Obligations*

The defendant agrees to the following: (1) to plead guilty to Count One of the Indictment, charging a violation of 21 U.S.C. '§ 841(a)(1) and (b)(1)(A)(viii); (2) the defendant further agrees to waive his appeal rights, as detailed below.

1



B. *Government's Obligations*

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(B). In exchange for the defendant's plea of guilty and waiver of his appellate rights, the government agrees to the following: (1) to recommend the Court give the defendant full credit for acceptance of responsibility per USSG § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of his guilty plea and sentencing; (2) to recommend a sentence within the Sentencing Guidelines range as calculated by the Court.

C. *Defendant's Waiver of Appeal*

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of **23**; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

### Count One: 21 U.S.C. '§ 841(a)(1) and (b)(1)(A)(viii)

First: Defendant knowingly or intentionally possessed a controlled substance as charged;

Second: the substance was in fact methamphetamine

Third: Defendant possessed the substance with the intent to distribute it; and

Fourth: the amount of the controlled substance was at least 500 grams or more

3

of a substance containing a detectable amount of methamphetamine.

### III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 21 U.S.C. '§ 841(a)(1) and (b)(1)(A)(viii): not less than 10 years' imprisonment; not more than life imprisonment; not more than a $10,000,000 fine, or both; not more than life supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

### IV. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting

the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate and agree as follows:

In October 2019, Two Rivers Drug Enforcement Team (TRIDENT) Commander Dave Moreno acting in an undercover capacity began communicating with Jesus Manuel Urias-Castaneda for the purpose of purchasing methamphetamine from Urias-Castaneda. During text messages and telephone calls via WhatsApp, it was agreed that Commander Moreno would send via Western Union a down payment of $1,500.00 to Urias-Castaneda in Mexico for two pounds of methamphetamine.

On October 18, 2019, Commander Moreno sent $1,500.00 via Western Union to Urias-Castaneda's wife in Sonora, Mexico. After numerous text messages and telephone calls between Urias-Castaneda and Commander Moreno it was agreed that Urias-Castaneda would instead send thirty pounds of methamphetamine to Commander Moreno for the agreed upon price of $2,500.00 per pound for a total of $75,000.00 upon delivery.

On November 13, 2019, Urias-Castaneda informed Commander Moreno that an individual named "Jose was going to leave Tucson, Arizona at midnight with the thirty pounds of methamphetamine and drive to Glenwood Springs to deliver it to Commander Moreno. Commander Moreno gave Urias-Castaneda 400 E Meadows Drive in Glenwood Springs as an address to give "Jose" as a location to meet Commander Moreno. Urias-Castaneda informed Commander Moreno that "Jose" would call Commander Moreno when he was in the area.

On November 15, 2019, at approximately 12:00 pm, Commander Moreno received a telephone call from 626-234-7548. The caller identified himself as "Jose" and stated that he was in the area. At that time, surveillance units located two vehicles with California license plates at the Alta Convenience Store, 2310 Glen Avenue in Glenwood Springs. The vehicles were identified as a 2008 Chevrolet Silverado and a 2012 Chevrolet Camaro. During surveillance of these two vehicles, Agents/Officers observed three Hispanic males talking together outside between the two vehicles. During surveillance of the Chevrolet Silverado and Chevrolet Camaro, Commander Moreno was in telephone contact with "Jose". While Commander Moreno was in cellular telephone contact with "Jose", Agents/Officers observed one of the Hispanic males (later identified as Jose Trochez-Sanchez) talking on his cellular telephone during the same time frame Commander Moreno was in cellular contact with "Jose".

Commander Moreno then placed a telephone call to "Jose", who then confirmed that he was driving a Chevrolet Silverado. Commander Moreno then proceeded to drive over to the Chevrolet Silverado, acknowledge "Jose" who was in the driver seat of the pick-up truck and yell to "Jose" for "Jose" to follow Commander Moreno. At that time, Commander Moreno followed by "Jose" in the pick-up truck exited the gas station parking lot and drive westbound on Interstate 70. Surveillance units then observed the Chevrolet Camaro exit the parking lot shortly thereafter and drive westbound on Interstate 70, attempting to follow the Silverado and Commander Moreno's undercover vehicle.

SA Alison Yates and SA David Smith who were assigned as the undercover protection unit was following the Chevrolet Silverado and Commander Moreno

6

westbound on Interstate 70, when SA Yates and SA Smith observed the Chevrolet Camaro pass SA Yates and SA Smith at a high rate of speed appearing to try and catch up to the Chevrolet Silverado. Agents then asked for law enforcement officers with Colorado State Police and Garfield County Sheriff's Office to conduct stops on the Chevrolet Silverado and the Chevrolet Camaro.

The driver of the Camaro was identified as Francisco Alejandro-Escobar and the passenger was identified as Christopher Paredes-Moreno. During the traffic stop, consent to search the vehicle was obtained from both Alejandro-Escobar and Paredes-Moreno. During a search of the vehicle, a black duffle bag was located in the trunk of the vehicle where the spare tire would be located. Upon opening the black duffle bag, 28 clear vacuum-sealed bags containing a clear crystal like substance was discovered. SA Smith and SA Yates later weighed and tested the suspected methamphetamine at the Trident office. The packages weighed 28.9 pounds or 13.5 kilograms. The substance in the packages was tested using a nik field test kit. The substance proved presumptive positive for methamphetamine, and laboratory testing later confirmed this.. Alejandro-Escobar and Paredes-Moreno were placed under arrest where they were then transported to the DEA Glenwood Springs POD for questioning.

The driver of the pick-up truck was identified as Jose Santos Trochez-Sanchez and the passenger of the vehicle was identified as Karen Paredes. Paredes-Moreno was advised of his Miranda Rights and stated he understood his rights and agreed to answer questions. During questioning of Christopher Paredes-Moreno, he stated that he and Alejandro-Escobar were traveling in his Camaro and that his sister (Karen Paredes) and her husband Trochez-Sanchez were traveling in a separate vehicle.

7

Paredes-Moreno stated he was going to be paid $2,000.00 for delivering the methamphetamine.

## VII.  ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.  The base offense level for Count One is **34** per §2D1.1(c)(3).

B.  There are no specific offense characteristics which apply.

C.  The defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases, and thus per §2D1.1(b)(18) there should be a **2**-level decrease. The resulting offense level therefore would be **32**.

D.  The parties believe the defendant should receive an adjustment under §3B1.2 (Mitigating Role). Per §2D1.1(a)(5) there should be a 3-level decrease. The resulting offense level would then be **29**.

E.  The parties agree that under §3B1.2 there should be an additional 3- level adjustment as a case falling between a minimal participant and a minor participant. The resulting offense level therefore would be **26**.

F.  Acceptance of Responsibility: The defendant should receive a 3-level adjustment for acceptance of responsibility. The resulting offense level therefore would be **23**.

G.  Criminal History Category: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant=s prior convictions. Based on information currently available to the parties, it is estimated that the defendant=s criminal history category would be **I**.

H.  Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

I.  Imprisonment: The advisory guideline range resulting from these calculations for Count One is **46-57** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **46** months (bottom of Category I) to **115** months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

9

J.  Fine: Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be **$20,000 to $200,000**, but not more than **$10,000,000**, plus applicable interest and penalties.

K.  Supervised Release: Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years but not more than 5 years.

The parties understand that although the Court will consider the parties estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party. The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VIII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances

assurances

not expressly stated in this agreement.

Date: 9/28/20

*Jose santos trocnes sanchez*
Jose Santos Trochez-Sanchez
Defendant

Date: 28 September 2020

Marna Lake
Attorney for Defendant

Date: _____

Pete Hautzinger
Assistant U.S. Attorney

11

not expressly stated in this agreement.

Date: _____  
	Jose Santos Trochez-Sanchez  
	Defendant

Date: _____  
	Marna Lake  
	Attorney for Defendant

Date: 9/29/20  
	Pete Hautzinger  
	Assistant U.S. Attorney

11